**MORRISTOWN KNITTING MILLS, Inc., v. UNITED STATES.**

No. 45241.

Court of Claims.

Feb. 2, 1942.

George E. H. Goodner, of Washington, D. C. (Helen Goodner, of Washington, D. C., on the brief; Scott P. Crampton, of Washington, D. C., of counsel), for plaintiff.

L. H. Will, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff sues to recover $1,056.20, paid as a floor stocks tax under the Agricultural Adjustment Act, 48 Stat. 31, 40, which tax the Supreme Court of the United States held in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, had not been constitutionally levied. The

Revenue Act of 1936, 49 Stat. 1648, enacted after the Supreme Court's decision, provided, in language hereinafter quoted, for the return, in some instances, to the taxpayer of such taxes. Plaintiff, on June 9, 1937, filed a claim for refund, which was promptly rejected by the Commissioner of Internal Revenue on the ground that the claim did not comply with the requirements of the 1936 Act and applicable Treasury Regulations. In September 1940, this suit was begun.

The defendant has filed a special plea urging that the court does not have jurisdiction of the case because no proper claim for refund was made to the Commissioner. Plaintiff replied to the special plea, urging that its claim for refund did comply with the statute, and that to whatever extent it did not comply with the Regulations, those Regulations were ultra vires the Commissioner and it was not necessary to comply with them. A hearing was held on the special plea and the facts recited in our findings were proved.

Pertinent provisions of the Revenue Act of 1936 are as follows:

"Sec. [§] 902. Conditions on Allowance of Refunds

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner what-

soever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever.

" Sec. [§] 903. Filing of Claims

"No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act unless, after the enactment of this Act, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner is authorized to prescribe by regulations, with the approval of the Secretary, the number of claims which may be filed by any person with respect to the total amount paid by or collected from such person as tax under the Agricultural Adjustment Act, and such regulations may require that claims for refund of processing taxes with respect to any commodity or group of commodities shall cover the entire period during which such person paid such processing taxes. * * *

"Sec. [§] 916. Rules and Regulations.

"The Commissioner shall, with the approval of the Secretary, prescribe such rules and regulations as may be deemed necessary to carry out the provisions of this title."

Treasury Regulations 96, promulgated under the 1936 Act, and applicable to plaintiff's claim, were as follows:

"Article 201. *Claims—Form and where to file.*—Claims for the refund of tax shall be made on the prescribed forms. Such claims shall be prepared in accordance with the instructions contained on the forms and in accordance with the provisions of these regulations. Each claim (except claims for refund of compensating tax—see article 401) shall be filed with the collector of internal revenue for the

district wherein the claimant has his principal place of business. If the claimant has no principal place of business in the United States, the claim shall be filed with the collector of internal revenue located at Baltimore, Md. Copies of the prescribed forms may be obtained from any collector of internal revenue.

"Art. 202. *Facts and evidence in support of claim.*—Each claim shall set forth in detail and under oath each ground upon which the refund is claimed. It is incumbent upon the claimant to prepare a true and complete claim and to substantiate by clear and convincing evidence all of the facts necessary to establish his claim to the satisfaction of the Commissioner; failure to do so will result in the disallowance of the claim."

The provisions of these regulations require that certain specific facts shall be stated in support of any claim for refund. The claimant is privileged to prove those facts in any manner available to him and to submit such evidence to that end as he may desire. "Art. 204. *Conditions as to tax burden with respect to amount of refund allowable.*—A refund may be allowed to the person who paid the tax, only of that amount paid as tax as to which the claim- ant establishes to the satisfaction of the Commissioner (1) that he bore the burden of such amount and has not been, or may not be, relieved thereof nor reimbursed therefor, and has not shifted such burden, directly or indirectly, through or by any of the means set forth in subsection (a) of section 902 of the Act; or (2) that he has repaid such amount unconditionally to his vendee who bore the burden thereof, as provided in subsection (b) of section 902 of the Act."

Plaintiff filed its claim, prepared on Treasury Department P. T. Form 76. On the form was an affidavit containing the following paragraph: "4. (a) That the amounts of the burden of the floor- stocks taxes which were borne by the claim- ant as set forth in column 3 above are true and correct; that the claimant has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or in- directly, (1) through inclusion of such amounts by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which such tax was paid; or (2) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amounts, be reimbursed therefor, or may shift the burden thereof; and (b) that the data and statements submitted in and made a part of Schedule D are true and correct."

This paragraph was deleted by plain- tiff from the form and the words "See statement attached" were substituted. The statement, attached to Schedule D on page 3 of the form, was as follows:

"It is impossible to determine and prove how much of the tax, if any, was not ab- sorbed by claimant, and claimant believes, and therefore asserts that it absorbed all the tax.

"Claimant demands refund of the entire amount paid because the Supreme Court has held that it was illegally assessed and collected and because any attempt to con- dition or restrict the refund thereof, by re- quiring proof that the tax was absorbed by claimant, is unconstitutional and void."

Among the instructions appearing on page 4 of P. T. Form 76 were the follow- ing:

"6. *Amount of claim.*—(a) The claim- ant shall enter in column 3 on the face of the claim form the amount of the burden of the floor-stocks tax borne by the claim- ant and which the claimant has not shifted to other persons within the terms of sec- tion 902 (a) of the Act. The facts and evi- dence, together with exhibits and other data showing the amount of the burden of the tax borne by the claimant and not shifted to other persons, shall be made a part of Schedule D." (See paragraph 7.)

"7. *Facts and evidence.*—The claimant shall set forth in his claim in detail each ground upon which the refund is claimed. It is incumbent upon the claimant to pre- pare a true and complete claim and to pre- sent and substantiate by clear and convinc- ing evidence all the facts necessary to es- tablish his claim to the satisfaction of the Commissioner; failure to do so will result in the disallowance of the claim. The claimant is required to set forth clearly the facts of his claim and is privileged to prove those facts in any manner available to him and to submit such evidence to that end as he may desire."

Plaintiff submitted no evidence to the Commissioner of Internal Revenue either

when it filed its claim, or at any other time. In the hearing before a Commissioner of this court on defendant's special plea, plaintiff has submitted a considerable amount of written and oral evidence, including its sales records from August 1, 1933, the day the tax was imposed, to January 31, 1934, its cash journal sheets, its orders on hand August 1, 1933, and invoices of goods sold. The evidence shows that its floor stocks, or taxable cotton on hand on the tax day, consisted of 10,859 pounds of yarn in its warehouse and on its machines in process of manufacture into children's stockings, its only product; 10,000 pounds of "seconds," or stockings with imperfections, which had accumulated from previous manufacture and were customarily sold at reduced prices; and 3,091 pounds of finished goods boxed and ready for shipping. Each dozen pairs of stockings weighed a pound. Plaintiff on August 1, 1933, had unfilled orders for 56,000 dozen pairs of stockings.

On July 17, 1933, plaintiff put into effect wage increases required by the National Industrial Recovery Act, 48 Stat. 195, which increased its labor costs per dozen pairs of stockings, and per pound, by 33½ cents for stockings manufactured after that time. The floor stocks tax, which was laid on August 1, amounted to 4.4184 cents per dozen, making a total increase due to these two causes of 37.9184 cents per dozen.

Plaintiff, on or about August 1, negotiated with its customers, whose orders for first grade stockings it had theretofore accepted at specified prices, for an increase in those prices sufficient to cover its increased labor costs and taxes.[1] In most cases it was successful. As to only 6,531½ dozen pairs of stockings out of the 56,000 dozen ordered was it obliged to fill its orders for a price leaving it to bear any of the increased labor cost and tax. As to the customers who would not increase their contract prices by enough to cover the whole amount of these additions, many of them did increase their prices by lesser amounts ranging from 35 cents down to 15 cents per dozen and purchasers of only 380 dozen pairs refused any increase whatever. The following tabulation shows the action of customers who refused to completely relieve plaintiff of its added labor and tax costs.

| Dozen pairs: | Agreed price increase |
|---|---|
| 876 | 35 cents. |
| 1,554½ | 32½ cents. |
| 766 | 30 cents. |
| 2,955 | 15 cents. |
| 380 | 00 cents. |

Plaintiff was, at the time in question, knitting some 20,000 dozen pairs of stockings from 20,000 pounds of yarn per month. As we have seen, out of the 56,000 dozen pairs for which plaintiff had orders on August 1, 1933, it secured increased selling prices of at least the amount of the labor cost increase and the tax as to all but 6,531½ dozen pairs. As to only 10,859 pounds of yarn had plaintiff paid any tax which it might possibly recover. Only by assuming, contrary to all probabilities, that the 6,531½ dozen pairs were made out of the 10,859 pounds of yarn taxed to plaintiff, would plaintiff be entitled to a refund as to all those pairs. If, more in accord with the probabilities, we should apportion the 10,859 pounds of taxed yarn to the 56,000 dozen stockings ordered, it would show a proportion of $x:6,531::10,859:56,000$, the solution of which would give 1,383 as the number of dozen pairs on which plaintiff had borne the tax, in whole or in part. But still better, the exhibits in the case seem to show that from plaintiff's records it would be possible to relate the 10,859 pounds of yarn taxed to the 6,531½ dozen pairs by applying a "first in, first out" rule of thumb which would be still more accurate.

As to the taxed yarn, then, that evidence shows that as to 4327½ (10,859—6531½) of the 10,859 pounds, plaintiff did not bear the burden of the tax, and as to the remainder, the evidence shows that the very great probability is that only as to about one-fifth $\left(\dfrac{10,859}{56,000}\right)$ of it, did it bear any of the burden, which approximations could have been reduced to greater certainty by evidence in plaintiff's possession.

As to the 3,091 dozen pairs of stockings which were boxed and ready for shipment on August 1, plaintiff has introduced no

---

[1] As to some 46,000 dozen pairs of these stockings, plaintiff would not have any tax to pay, but it would probably have to pay for its yarn a price increased by the amount of the tax, if the yarn was contracted for after the tax became imminent.

evidence as to whether or not they were among the goods shipped in response to unfilled orders on hand on August 1, as to most of which it had obtained price increases. As in the case of the taxed yarn, plaintiff could, apparently, have given information on this question.

The evidence as to the 10,000 pounds (dozens) of seconds on which plaintiff paid the tax is that it sold in the six months period following the tax day, 12,258 dozen pairs of seconds at specified prices, in most instances not greater than the prices it had been selling the same styles for before the tax was imposed. The record is complete except that it does not show, what would be probable, that in general, seconds were sold in about the order in which they were made, and that therefore the taxed seconds were sold, or were probably sold, within the period. Plaintiff's president and manager, who was in active charge of the business when the tax was laid, when the refund claim was filed, and at the time of the hearing, could no doubt have given information as to that practice.

Plaintiff urges that the record shows that the question of whether plaintiff had or had not passed on the tax to its purchasers was a question which it was impossible to answer, and that therefore, it is entitled to a refund of the tax without having answered it.

We do not find here impossibility of proof of a sort which would prevent justice being done between the taxpayer and the government because of a want of evidence. It seems to us that the evidence available here for presentation to the Commissioner would have been as full and satisfactory as would be usual in this type of case, and that there is no more reason why it should have been withheld from the Commissioner in this than in any other case. Since we do not find the impossibility of proof for which plaintiff contends, it is not necessary to construe the 1936 statute to ascertain what Congress intended if proof should be impossible, nor to determine what

constitutional problems might be raised, nor how they should be resolved, if Congress intended to deny recovery to a taxpayer when proof was in fact impossible. [2]

The real reason, as it seems to us, for plaintiff's refusal to comply with the statute and the Regulations is to be found in its theory, or that of the trade association which furnished the language of the refusal, that having paid the illegal tax, it was entitled to recover it with no questions asked as to whether it had passed it on. It refused to furnish the evidence because it regarded it as immaterial. But its theory was wrong. Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L. Ed. 1143.

The requirement that a claim for refund be filed with the Commissioner before litigation may be instituted "is a familiar provision of the revenue laws." United States v. Felt & Tarrant Co., 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025. The practical purpose served by it, viz, the disposition of most of such claims by departmental action and without litigation, has been stated by this court in Factors' & Finance Co. v. United States, 56 F.2d 902, 73 Ct.Cl. 707, 717. The Circuit Courts of Appeals for the Eighth and Sixth Circuits have, respectively, in the cases of Lee Wilson & Co. v. Commissioner, 111 F. 2d 313, and Tennessee Consolidated C. Co. v. Commissioner, 117 F.2d 452, held that claims for refund substantially identical with the claim here filed were insufficient and that the plaintiffs in those cases were, therefore, unable to present their claims in court. We agree with those decisions.

We conclude that plaintiff, having refused to comply with the requirements of the statute and with the valid regulations of the Department in the filing of its claim, has no right to be heard here upon that claim.

The defendant's special plea is therefore sustained, and the petition dismissed.

It is so ordered.

---

[2] Compare Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.