**FRANK v. UNITED STATES.**

No. 45548.

Court of Claims.

Nov. 5, 1945.

Plaintiff brought this suit on a rejected claim for refund filed under sections 902 and 903, Title VII, Revenue Act of 1936, 7 U.S.C.A. §§ 644, 645, to recover $36,735.16 floor-stocks tax paid during 1933 on cotton merchandise on hand on August 1, 1933, pursuant to sec. 16 (a) (1) of the Agricultural Adjustment Act of May 12, 1933, 7 U.S.C.A. § 616(a) (1).

The case was heard and submitted on issue joined on defendant's plea in bar to the right of plaintiff to maintain this suit and to submit evidence, not theretofore submitted to the Commissioner of Internal Revenue, in support of the claim made in the

petition and the claim for refund upon which it is based for the return of the floor-stocks tax paid.

## Special Findings of Fact

1. Plaintiff is a Texas corporation engaged in the wholesale dry-goods business, including all types of cotton textile products, with its principal office and place of business in San Antonio.

2. On August 31, 1933, it filed a tentative floor-stocks tax return of the tax imposed by sec. 16 of the Agricultural Adjustment Act of May 12, 1933, on articles on hand on August 1, 1933, which were processed wholly or in chief value from cotton and at that time paid $8,836.80 as an installment on the estimated tax shown due. On September 29, 1933, it filed its completed floor-stocks tax return which showed a net taxable inventory of such cotton goods on hand of 831,413¼ pounds and a total tax due thereon of $36,-735.16. That tax, after credit for the amount paid on August 31, 1933, was paid during 1933 in three installments of $9,-530.78 on September 30, and of $9,183.79 each on October 30, and November 27.

3. June 29, 1935, plaintiff filed a claim for refund of $36,735.16, the floor-stocks tax which had been paid as shown in the preceding finding. The basis of this claim was that the statute under which the tax had been reported and paid was unconstitutional. The Commissioner of Internal Revenue rejected that claim September 17, 1935. After the Supreme Court on January 6, 1936, in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declared the statute under which these taxes were assessed and collected unconstitutional, plaintiff requested that its claim be reopened and such request was granted by the Commissioner March 30, 1936. The claim was again rejected and plaintiff so advised by letter dated January 12, 1937, which informed plaintiff of its privilege of filing a new claim under the provisions of Title VII of the Revenue Act of 1936 on the forms prescribed in Regulations 96.

4. June 30, 1937, plaintiff filed an amended claim for refund in the same amount as the preceding claim. In that claim in response to the requirement of the statute and the instructions set out on the claim that plaintiff establish to the satisfaction of the Commissioner that it bore the burden of such tax and had not shifted such burden directly or indirectly in any manner whatsoever, plaintiff made the following statement: "The information required under these headings is omitted for the reason that it is impossible to prove how much of the tax was absorbed by the taxpayer and not passed on to others, and the attempt to condition such refund upon the information called for by these headings is therefore unconstitutional and invalid."

5. May 28, 1938, the Commissioner rejected the claim for refund referred to in finding 4 with the statement that "Since the claim is not founded on the basis that you bore the burden of the tax, the allowance of the claim as now filed is prohibited by the provision of law referred to above [Section 902 of the Revenue Act of 1936 and Regulations 96 promulgated thereunder]."

At the same time the Commissioner advised plaintiff of its privilege of filing an amended claim (there still being sufficient time for the filing of a claim) on the appropriate form (P. T. Form 76) which was enclosed and gave to plaintiff the following instructions with respect to the preparation of that claim:

"The amended claim should be supported by clear and convincing evidence which will establish that the burden of the tax was borne by you and not shifted to others. This office is not in a position to suggest all types of evidence which may be available. You are advised, however, that appropriate consideration will be accorded to a statement showing (a) the prices at which the finished articles listed in your floor stocks tax return, P. T. Form 32, were sold, (b) the prices at which the products, in the manufacture of which any of the articles included in the return were used, were sold, (c) the prices at which similar finished articles and manufactured products were sold prior to the effective date of the tax (August 1, 1933). Where a complete showing with respect to the prices of all the finished articles and manufactured products cannot be submitted, a showing should be made with respect to a sufficient number as to be truly representative of the entire inventory.

"Evidence should also be submitted showing whether any changes were made in trade and cash discounts or freight allowances granted to your customers.

"Full consideration will be given to any other evidence that you may be in a posi-

862

tion to furnish which, in your opinion, will tend to establish whether you bore the burden of the tax.

"Action on the present claim will be suspended for a period of thirty days from the date of this letter in order to enable you to prepare and submit an amended claim and the necessary supporting evidence."

On June 21, September 26, October 25, and November 29, 1938, and January 26, and March 2, 1939, plaintiff requested extensions of time within which to prepare the amended claim for refund, which extensions were granted.

6. April 10, 1939, plaintiff filed an amended claim for refund under oath on Form P. T. 76 in the same amount ($36,-735.16) for the same floor-stocks tax referred to in the preceding claims. This claim was accompanied with a seven-page letter directed to the Commissioner and signed by Edward O. Miller, a certified public accountant, which letter was referred to in the claim as responsive to the requirement that plaintiff show that it bore the burden of the tax and had not shifted it to other persons. This letter or statement of facts was attached to the claim as a part of it, and was expressly included in and under the signature and oath of plaintiff by its President, who signed and verified the claim. The Commissioner associated that statement and computation with amended claim and throughout considered and treated the document as a part thereof, and it will hereinafter be referred to as a part of the claim.

7. While the claim of April 10, 1939, makes reference to the Commissioner's instructions of May 28, 1938 (see finding 5), and purports to be filed in accordance with the requirements in Section 902 of the Revenue Act of 1936, the claim set out in the five printed grounds thereof to be sworn to by the taxpayer the types of evidence permissible under Section 907 of the Revenue Act of 1936, 7 U.S.C.A. § 649, which prescribed a type of evidence in the nature of average margin of profit computations in order to substantiate a claim for the refund of processing taxes. This was not the only type of evidence which the Commissioner might require. These average margin computations set forth in Schedule D of the claim purported to be based on net sales and gross profits taken from plaintiff's books and records and show an

increase of the average margin of profit for a twenty-nine months' period beginning August 1, 1933, over the average margin prevailing during a twenty-four months' period ending July 31, 1933. The claim also contained the following explanation of some of the results shown by the margin computation:

"The above statement indicates that the average margin before the tax period was 19.25%, during the tax period 22.46%, and following the tax period 18.67%. The marginal percentage during the tax period reflects an increase of 3.21% from the period before the tax. This increase is, in part, the result of an increase in unit sales prices which started early in June, 1933, and continued in an upward trend until the latter part of the year. The reason underlying the selling price modification was to cover increased cost of merchandise resulting from the legislative enactment of the National Industrial Recovery Act and to anticipate processing taxes passed on to the company from their suppliers. The effect of the processing tax on the cost of merchandise purchased subsequent to August 1, 1933, was estimated, and the selling prices adjusted accordingly. In doing this, it was not intended to shift to others the floor stock tax paid on the inventory of August 1, 1933. At the time of the enactment of the Agricultural Adjustment Act, the taxpayer understood that the amount so paid would be refunded in full. In view of this, the company did not consider the floor stock tax as a cost of sales item, and accordingly it was not considered in the modification of their selling price.

"Starting in 1934, the selling prices reflected a downward trend which continued through to the end of 1935, resulting in a margin of 22.42 in 1934 and 18.31 in 1935. It is quite obvious that the company was unable to shift to others any portion of the processing tax during the period of the decline in unit sales prices.

\*     \*     \*     \*     \*

"Concluding our remarks on the evidence furnished in the preceding pages, there were other causes beyond the control of the company, which entered into the assessment and collection of this tax, which made it impossible for them to make provision to shift the burden of this tax to others, and that the manufacturing departments were penalized to the extent of not only the floor stock tax but the processing tax as well."

8. After receipt of the claim of April 10, 1939, the Commissioner advised plaintiff on May 13, 1939, that the marginal data submitted in support of that claim did not afford a sufficient basis for him to determine whether and to what extent the burden of the floor-stocks tax was borne by plaintiff and requested that additional evidence be submitted within thirty days, including the following:

"(1) A statement showing the prices charged by you before and after the effective date of the tax (August 1, 1933) for the cotton articles on which you paid the tax.

"In connection with the inventoried merchandise that was increased in price beginning with August 1, 1933, a statement should be submitted showing opposite each such article (a) the quantity on hand at the time of each change, (b) the sales price in effect before the price was changed, and (c) the new price put into effect.

"The above statements should be substantiated by price lists, sales invoices, and memoranda to salesmen and customers.

"(2) A detailed explanation of the method used in recording new merchandise and any that may have enhanced in value.

\*     \*     \*     \*     \*

"(7) A detailed explanation should be submitted as to the manner in which supervision is maintained over departmental inventories. If these inventories are recorded at resale values, a statement should be submitted listing the various departments that had merchandise on which the tax was paid and showing in separate columns, in dollars and cents, the additional mark-ups and mark-downs with respect to the inventoried merchandise only, for each month beginning with August 1933, until all of such inventoried merchandise was disposed of. In addition, a statement should be prepared showing opposite each department their respective rates of stock turnover."

On June 20, 1939, additional evidence not having been received, the Commissioner advised plaintiff that if not furnished within thirty days from the date of that letter it would be necessary to proceed with the adjustment of the claim on the basis of the evidence on file. July 20, 1939, an extension of five days within which to furnish the information was granted and on July 25 plaintiff's accountant advised the Commissioner that the additional evidence was being mailed that day for signature and would be transmitted immediately to his office. However, the additional evidence was never furnished and the Commissioner on September 15, 1939, rejected the claim except as to an amount of $253.24 which had previously been allowed under the provisions of Section 15 of the Agricultural Adjustment Act on account of certain articles delivered to charitable institutions.

9. November 27, 1939, Edward O. Miller, the accountant who prepared and signed the document accompanying the claim of April 10, 1939, as schedule D, referred to in finding 6 (but who did not have a power of attorney on file with the Bureau to represent plaintiff), requested information whether plaintiff could file an amended claim prior to December 31, 1939, and on December 8, 1939, similar information was requested by another accountant from the same accounting firm, C. W. Barstow, who enclosed a power of attorney to represent plaintiff. December 9, 1939, the Commissioner advised Miller in part as follows:

The recourse of claimants in the case of claims for refund of floor stocks tax is to the courts. Section 904 of the Revenue Act of 1936, 7 U.S.C.A. § 646, provides that no such suit or proceeding shall be brought or maintained after the expiration of two years from the date of mailing by registered mail by the Commissioner of notice of disallowance of that part of the claim to which such suit or proceeding relates. However, evidence may be submitted to the Bureau in support of any claim filed on P. T. Form 76 for refund of floor stocks tax, and if the evidence justifies such action the claim may be reopened for consideration at any time prior to the expiration of the two-year period within which a suit may be brought.

December 28, 1939, Barstow had an informal conference with a representative of the Commissioner in regard to further evidence to be submitted on plaintiff's claim for refund and on September 20, 1940, Miller requested a further conference which was held on September 27, 1940, and which was attended by Barstow and Miller representing plaintiff. At that conference Barstow stated that he had no additional evidence to present but that he would attempt to prepare some additional evidence and would advise the Commissioner wheth-

er or not such additional evidence would be submitted. No additional evidence was ever submitted to the Commissioner.

10. In accordance with the provisions of the applicable statute and regulations requiring that all evidence relied upon in support of claims for refund of floor-stocks tax be clearly set forth under oath, the Bureau of Internal Revenue established a general practice, after the invalidation of the statute imposing such tax, under which taxpayers were required to submit evidence showing what action, if any, each had taken to secure reimbursement from others of such amounts as had been paid as federal floor-stocks tax. That evidence included prices charged before and after the tax became effective and any facts showing that an increased price resulted from some reason other than the tax. That general practice was followed in the instant case. Plaintiff submitted nothing in support of any of its claims for refund, above mentioned, except the seven-page letter which was filed with and as a part of the amended claim for refund of April 10, 1939.

11. After the filing of the petition herein and prior to the filing of defendant's plea in bar on April 22, 1944, plaintiff sought to prove its claim for the refund of the floor-stocks tax from its books, records, audit schedules, invoices and other data showing the prices prevailing both before and after August 1, 1933, and by the testimony of witnesses. Except to the extent shown in the claim for refund filed April 10, 1939, none of this evidence was ever presented or offered to the Commissioner when he was considering the claim for refund and at which time it either was available or could as, or more, readily have been obtained and submitted than after this suit was filed.

Theodore B. Benson, of Washington, D. C., for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff is engaged in the business of selling at wholesale and in fabricating or manufacturing cotton goods. Pursuant to the provisions of section 16 of the Agricultural Adjustment Act of May 12, 1933, 7 U.S.C.A. § 616, and the Treasury regulations, plaintiff filed a floor-stocks tax return of the cotton goods on hand on August 1, 1933, and paid the tax of $36,735.16 shown to be due thereon. After the act of May 12, 1933, supra, had been declared invalid in United States v. Butler et al., Receivers, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, Congress, in sections 901 to 917, inclusive, Title VII of the Revenue Act of 1936 approved June 22, 1936, 7 U.S.C.A. §§ 644–659, provided for the filing of claims for refund and for the refund of processing taxes and floor-stocks taxes paid upon proper proof, and stated broadly that the taxpayer bore the burden of the tax and did not directly or indirectly pass it on.

The question raised and presented by defendant's plea in bar and plaintiff's answer thereto is whether under Title VII, and more particularly sections 902 and 903 thereof, and the Treasury regulations issued under section 916, plaintiff is entitled in this proceeding to submit evidence in support of and to substantiate its claimed refund, which evidence was not submitted to the Commissioner of Internal Revenue in connection with and in support of refund claim filed with and decided adversely to plaintiff by the Commissioner.

Sections 902 and 903 are as follows:

"Sec. 902. Conditions on Allowance of Refunds.

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any

article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever.

"Sec. 903. Filing of Claims.

"No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act unless, after the enactment of this Act, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner is authorized to prescribe by regulations, with the approval of the Secretary, the number of claims which may be filed by any person with respect to the total amount paid by or collected from such person as tax under the Agricultural Adjustment Act, and such regulations may require that claims for refund of processing taxes with respect to any commodity or group of commodities shall cover the entire period during which such person paid such processing taxes."

The pertinent provisions of Treasury Regulations 96, issued under Title VII, are as follows:

"Art. 202. Facts and evidence in support of claim.—Each claim shall set forth in detail and under oath each ground upon which the refund is claimed. It is incumbent upon the claimant to prepare a true and complete claim and to substantiate by clear and convincing evidence all of the facts necessary to establish his claim to the satisfaction of the Commissioner; failure to do so will result in the disallowance of the claim.

"The provisions of these regulations require that certain specific facts shall be stated in support of any claim for refund. The claimant is privileged to prove those facts in any manner available to him and to submit such evidence to that end as he may desire.

*　　*　　*　　*　　*　　*

"Art. 204. Conditions as to tax burden with respect to amount of refund allowable.—A refund may be allowed to the person who paid the tax, only of that amount paid as tax as to which the claimant establishes to the satisfaction of the Commissioner (1) that he bore the burden of such amount and has not been, or may not be, relieved thereof nor reimbursed therefor, and has not shifted such burden, directly or indirectly, through or by any of the means set forth in subsection (a)·of section 902 of the Act; or (2) that he has repaid such amount unconditionally to his vendee who bore the burden thereof, as provided in subsection (9) of section 902 of the Act.

*　　*　　*　　*　　*

"Art. 302. Limitation as to number of claims.—Only one claim shall be filed by any person for refund of floor stocks taxes. The claimant shall include in such claim the total amount of refund claimed with respect to the total amount of all floor stocks taxes paid by him.

*　　*　　*　　*　　*

"Art. 305. Facts and evidence respecting tax burden.—If the claim involves floor stocks taxes paid with respect to more than one commodity, the facts and evidence as to the amount of tax burden borne with respect to articles made from each such commodity shall be set out separately; e. g., if the claim is for refund of amounts paid as cotton floor stocks tax and as wheat floor stocks tax, the facts and evidence concerning the tax burden with respect to cotton articles shall be set forth separately from the like facts and evidence with respect to wheat articles. (See article 202.)"

Plaintiff insists that under the statute and the regulations the plea in bar should be denied and that plaintiff should be permitted to submit to the court and have considered on its merits such evidence as it may have to offer and submit in support of the claimed refund as stated in the petition. It contends (1) that evidence was, in fact, submitted to the Commissioner of Internal Revenue in support of several, if not all,

of the bases of its claim, and (2) that the jurisdiction of this court is not limited to consideration of the same evidence that was submitted to the Commissioner of Internal Revenue.

The defendant contends that the provisions of the applicable statutes and regulations, as well as express instructions printed as part of the refund claim form, intended and required that all facts and evidence which any taxpayer had to submit in support of a claim for refund of floor-stocks tax were to be presented to the Commissioner as part of that claim; that the evidence and facts by which plaintiff seeks to prove its claim from its books, records, audit schedules, invoices, and data showing the prices prevailing both before and after August 1, 1933, and by the testimony of witnesses, are irrelevant and immaterial in that such proof relates to matters and evidence not theretofore presented to the Commissioner of Internal Revenue as required by applicable law and regulations; that, except to the extent shown in the claim for refund filed April 10, 1939, none of this evidence was ever presented or offered to the Commissioner when he was considering the claim for refund, at which time it either was available or could have been more readily obtained than after this suit was filed.

We cannot agree with that part of the contention of defendant which broadly asserts that although a taxpayer has submitted evidence to the Commissioner in support of his claim for refund he may not, under the statute and the regulations concerning the filing of the refund claim, submit other or further evidence in court in a suit upon a rejected claim for refund unless he had submitted that same evidence and the facts sought to be established thereby to the Commissioner of Internal Revenue with and as a part of his claim for refund. Plaintiff says that is the only issue in this case but, as we will attempt to show, we think the important issue in the case is whether plaintiff submitted any evidence to the Commissioner to substantiate its claim for refund.

■■■ Neither section 902 nor 903 states specifically that all evidence that can be introduced before the Commissioner in connection with the claim, or in court if the claim is rejected, must be included in the claim for refund and filed with and as a part of the claim. We do not read the regulations as imposing this strict require-

ment. The Commissioner's action and procedure in this case, as well as certain of the provisions of section 902 and Regulations Art. 202, disclose a purpose to allow a separate submission of evidence and proof to establish the grounds and statement of facts set forth by the taxpayer in the claim. Of course, as in the case of any claim for refund of an internal revenue tax, all the evidence to be relied upon by the taxpayer in support of the claim *may* be set forth in and as a part of the claim at the time it is filed under sections 902 and 903. Section 903, which relates to the filing of claims for floor stocks and processing tax, contains the provision that "All evidence relied upon in support of such claim shall be clearly set forth under oath," but a reading of all the provisions of Title VII as a whole shows, we think, that this provision does not mean that all evidence that may be submitted must be set forth in and as a part of the claim at the time it is filed, nor that in the event of the rejection of the claim by the Commissioner further and additional evidence cannot be introduced in "the trial court," in the case of a floor-stocks tax, in support of the claim to show that the Commissioner's decision of rejection was erroneous. The provisions of Title VII do show, however, that with respect to these particular refunds, it was the purpose to require the taxpayer to attempt to prove his right to a refund before the Commissioner, and he cannot stand on a summary of facts set forth in his claim and refuse to offer or submit evidence to establish such facts and such other evidence as the Commissioner may desire, and, upon rejection of the claim for the lack of such evidence, seek to submit such evidence to the court.

Sections 902 and 903 relate to the grounds and the proof necessary to obtain refunds and to the filing of claims for both the processing tax and the floor-stocks tax. Under its general jurisdiction this court had unlimited jurisdiction of suits for the recovery of an overpayment of tax based on a rejected claim for refund and Title VII modified this jurisdiction only as to the processing tax; and section 905 gave the District Courts unlimited concurrent jurisdiction of suits for recovery of floor-stocks tax upon the denial of a claim for refund thereof. Other than the requirement that the taxpayer must submit evidence to the Commissioner for the purpose of establishing certain facts required by section 902 and that all evidence relied

upon in support of such claim shall be clearly set forth under oath, the statute does not indicate an intent or purpose to depart from the general rule in suits for the recovery of overpayments of taxes where the claims have been rejected in whole or in part, that the taxpayer may offer and submit further and additional evidence to show that the Commissioner's decision was erroneous on the facts or the law and that he is entitled to a refund of the overpayment claimed.

Jurisdiction to hear and determine claims of taxpayers for the return of the processing taxes collected, upon rejection of claims for refund by the Commissioner, was vested in the "Board of Review" established in the Treasury Department with the right of appeal to the appropriate United States Circuit Court of Appeals, and no limitation was placed upon the jurisdiction of this Board to receive and consider evidence in support of the claim in addition to such evidence as may have been submitted to the Commissioner. On the contrary, section 906 provides at length for a hearing before the Board and the taking of such evidence as may be offered by the taxpayer and the Commissioner. In other words, the Board of Review was made the trial court as to rejected claims for refund of the processing tax and it was not limited to the evidence set forth in the refund claim nor to the evidence submitted to the Commissioner. We think no such jurisdictional limitation may be implied as to the courts in suits with respect to the floor-stocks tax.

■ Section 902 provides as conditions to a refund or recovery of a floor-stocks tax or a processing tax that the taxpayer "[must establish in the manner stated in subdivisions (a) and (b)] to the satisfaction of the Commissioner in accordance with regulations prescribed by him, * * * or to the satisfaction of the trial court, or the Board of Review, * * * as the case may be," that the taxpayer bore the burden of the amount of refund claimed. It will be seen from this that this court, the District Courts, and the Board of Review are treated alike and placed in the same position with respect to a suit or proceeding for the recovery of the tax and the submission of evidence in support of a refund claim which has been rejected in whole or in part by the Commissioner. These statutory provisions mean, of course,

that in any case a taxpayer's right to maintain a suit or proceeding for and to obtain a refund depends upon proper compliance with reasonable regulations promulgated under authority of section 916. Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162. For the reasons stated we are of opinion that the right given by sections 902, 904 and 905 to litigate the matter of a refund in court, or in the Board of Review under section 905, was not to be limited solely to the record and evidence set forth in the refund claim filed or submitted to the Commissioner in support of such claim, or solely to questions of law arising on the record before the Commissioner.

■ We are of opinion, however, that the statute and the regulations definitely require the taxpayer to submit evidence to the Commissioner, either with the claim or later, in support of the statutory and printed grounds therein and the statement of facts alleged therein in support of such grounds; and that if the taxpayer does not submit or offer to the Commissioner any such evidence, as we think plaintiff did not, he cannot afterwards and for the first time submit in court evidence to establish the allegations of the claim for refund. The taxpayer must make, or attempt to make, a substantial showing before the Commissioner.

■ The sentence in section 903, which section relates to the filing of claims, that "All evidence relied upon in support of such claim shall be clearly set forth under oath," had reference, we think, to the character of evidence required and the only kind of evidence that would be considered, that is, only evidence which was given under oath would be admissible and properly considered,—whether it was submitted with the claim or in support of it after it had been filed. In either event, such evidence would be or become a part of the claim. In a suit upon the rejection of the claim the case must be tried de novo. There is no provision in the statute for the record before the Commissioner to come before the courts or the Board of Review. We do not think that Congress in the statute, or the Commissioner in article 202 of Regulations 96, intended to impose as a condition to the consideration and allowance of a refund by the Commissioner or the courts the technical requirement that all evidence that could or would be admis-

sible and considered must be submitted and filed with and at the time of the filing of the refund claim.

In Title VII Congress was dealing with the refund on special grounds of a special tax in a very large number of cases, the right to which refund, if it could be established, arose as soon as the act of June 22, 1936 was enacted. The specified grounds for a refund and the types and kinds of evidence or facts necessary to establish those grounds consisted, of necessity, of extensive audits, computations, determinations as to costs and sales prices over certain periods, margins of profits over long periods, business practices, etc. All of these matters were peculiarly susceptible of administrative investigation, consideration, and determination, and Congress obviously intended that these claims for refund of the floor-stocks tax and the processing tax be adjusted and settled, so far as possible, administratively. Sections 914, 915 and 917 gave the Commissioner of Internal Revenue broad and extended authority to hold hearings; to summon and examine witnesses; to call for records and reports, and to employ additional personnel, experts and economists to aid him in the administration of the statute. In view of these provisions and purposes of Title VII and the regulations, it may not be said that a taxpayer may, as plaintiff did, rest on a summary statement of facts and figures set out in the claim for refund; refuse to submit or offer the necessary and available detailed evidence to support and establish, or in an attempt to support and establish, such facts and figures to the satisfaction of the Commissioner, or to submit such other evidence as the Commissioner may request and, later, after his claim has been rejected for want of proper evidence, seek to prove his case in court by the submission, for the first time, of any real evidence.[1]

Plaintiff's claim for refund before the Commissioner was in the nature of a petition in court, the allegations of which it was required by statute and the regulations to attempt to establish by evidence under oath. If plaintiff had submitted evidence to the Commissioner to establish the grounds and allegations of the claim for refund, as set forth on the first page thereof and in Schedule D of the claim, and the Commissioner had rejected the claim because it had not been established to his satisfaction that plaintiff was entitled to a refund, plaintiff would not be barred here from submitting the same and further additional evidence along the same line and pertinent to the grounds to establish to the satisfaction of the court the allegations of the claim and its right under the statute to the refund.[2] However, as we have said, plaintiff did not offer or submit such evidence to the Commissioner, although the Commissioner advised plaintiff of his views on the statements in Schedule D of the claim and called upon plaintiff on a number of occasions to furnish certain evidence which plaintiff declined to furnish. As a result, the claim was rejected. The plaintiff, having failed and refused to submit any evidence to the Commissioner in support of its claim for refund, is now barred from submitting in court the evidence which was available and which could and should as readily have been offered to the Commissioner.

The plea in bar is therefore sustained, and the petition is dismissed. It is so ordered.

MADDEN and JONES, Judges, took no part in the decision of this case.

[1] Samara v. United States, 2 Cir., 129 F.2d 594; Weiss v. United States, 7 Cir., 135 F.2d 889; Morristown Knitting Mills v. United States, 95 Ct.Cl. 552, 556, 42 F. Supp. 817; Jaubert Bros. v. United States, 5 Cir., 141 F.2d 206, 207; New York Handkerchief Mfg. Co. v. United States, 6 Cir., 142 F.2d 111, 112, 113; 18th Street Stores v. United States, 6 Cir., 142 F.2d 113, 114; Louis F. Hall & Co., Inc. v. United States, 2 Cir., 148 F.2d 274, 276.

[2] Bethlehem Baking Co. v. United States, 3 Cir., 129 F.2d 490, affirming, D.C., 40 F.Supp. 936; New York Handkerchief Mfg. Co. v. United States, supra, 6 Cir., 141 F.2d at page 113; Interwoven Stocking Co. v. United States, 3 Cir., 144 F.2d 768; United States v. Root & McBride Co., 6 Cir., 136 F.2d 907; Hutzler Bros. v. United States, D.C., 33 F.Supp. 801; Ney v. United States, D.C., 33 F.Supp. 554.